1

2

3

4

5

6

7

8

9            IN THE UNITED STATES DISTRICT COURT

10              FOR THE DISTRICT OF OREGON

11  ROTISH VIKASH SINGH,            )
                                    )
12              Plaintiff,          )
                                    )    No.  CV-06-283-HU
13      v.                          )
                                    )
14  V. CLARK, et al.,               )    FINDINGS & RECOMMENDATION
                                    )
15              Defendants.         )
                                    )
16  ─────────────────────────────────
    Rotish Vikash Singh
17  Oregon State Penitentiary
    2605 State Street
18  Salem, Oregon 98310

19      Plaintiff Pro se

20  Hardy Myers
    ATTORNEY GENERAL
21  Jacqueline Sadker
    ASSISTANT ATTORNEY GENERAL
22  Department of Justice
    1162 Court Street NE
23  Salem, Oregon 97301-4096

24      Attorneys for Defendants

25  HUBEL, Magistrate Judge:

26      Plaintiff Rotish Vikash Singh, an inmate at the Oregon State

27  Penitentiary, brings this 42 U.S.C. § 1983 action against several

28  employees of the Oregon Department of Corrections (ODOC), alleging

1 - FINDINGS & RECOMMENDATION

that they were deliberately indifferent to his serious medical needs.  Defendants move for summary judgment.  I recommend that the motion be granted.

BACKGROUND

Plaintiff contends that defendants' refusal to provide surgery for a hiatal hernia as a method of treating his ongoing complaints of abdominal pain, exhibits defendants' deliberate indifference to a serious medical condition.  Accordingly, the relevant background consists of a review of plaintiffs' medical records regarding his abdominal pain, and defendants' response to his complaints.

The first indication of any complaint of abdominal pain is on January 7, 2002, in a notation indicating flank pain.  Attchmt 4 to Shelton Affid. at p. 272.  Plaintiff complained that he felt like his kidneys were not working.  <u>Id.</u> at p. 88.  Complaints of pain in the "left coastal margin, lower chest, and left flank area" were noted.  <u>Id.</u> at p. 88.  A January 8, 2002 urinalysis was negative. <u>Id.</u>

Dr. Hartwig examined plaintiff on January 15, 2002, and assessed myofascial strain in the left coastal margin.  <u>Id.</u>  Dr. Hartwig prescribed 600 milligrams of Ibuprofen, twice per day, for six weeks.  <u>Id.</u>  Plaintiff continued to complain of pain, and had a kidney x-ray performed on January 31, 2002, and an Intravenous Pyelogram (IVP)[1] performed on March 25, 2002.  <u>Id.</u> at pp. 89, 91. In following up with plaintiff on April 16, 2002, it was determined to refer plaintiff to the Therapeutic Level of Care Committee (TLC

---

[1]  A procedure where dye is injected into the vein and the kidney is surveyed by x-ray.  Shelton Affid. at p. 5 n.3.

2 - FINDINGS & RECOMMENDATION

Committee), for a possible urology consult because of continued microscopic blood in the urine. Id. at p. 92.

Urologist Dr. Marc M. Iseri examined plaintiff on July 31, 2002, and performed a cystoscopy. Id. at p. 256. The cystoscopy was negative except for microscopic hematuria for which Dr. Iseri prescribed an antibiotic. Id. at p. 258. Dr. Iseri also commented that plaintiff had some "vague left lower quadrant discomfort which may be GI." Id.

Plaintiff had, in fact, complained to Dr. Hartwig on July 9, 2002, of left lower abdominal quadrant pain. Id. at p. 96. On exam, Dr. Hartwig found slight tenderness of the left lower quadrant, but no palpable mass. Id. Plaintiff was scheduled for a flexible sigmoidoscopy in August 2002, but the machine was inoperable for a period of time in August and September, and thus, it was not performed until October 8, 2002. Id. at pp. 97, 100. During the interim period, he was seen by health care staff on several occasions, received reassurance that he was on the list for the test, and on September 14, 2002, received three Hemocult stool test cards which were all negative. Id. at pp 97-99.

The sigmoidoscopy revealed mild colitis. Id. at pp. 100. Plaintiff was started on a prescription medication, Azulfidine, typically prescribed for ulcerative colitis.[2] Id. at p. 102. Plaintiff was transferred from SRCI to OSP and complained of itching, caused by the medication. Id. He was switched to

---

[2] In generic form, Azulfidine is known as sulfasalazine and is used for the treatment of mild to moderate ulcerative colitis. See www.medicinenet.com/sulfasalazine.

3 - FINDINGS & RECOMMENDATION

Bentyl.[3]

Plaintiff continued to complain of pain. _Id._ at 102. A surgeon, Dr. Strauss, saw plaintiff on November 14, 2002, and noted that plaintiff continued to complain of pain. _Id._ at pp. 103, 105. He also noted that a gastroenterology consult might be obtained if the pain represented some sort of inflammatory bowel disease and if plaintiff failed to respond to the Azulfidine. _Id._

In January 2003, plaintiff was examined by Dr. Degner who noted plaintiff's continued complaint of lower left quadrant abdominal pain. _Id._ at p. 106. Dr. Degner found no masses or guarding on physical examination. _Id._ Dr. Degner ordered various laboratory tests and a chart entry on January 22, 2003, indicates that these tests were within normal limits. _Id._ Dr. Steve Shelton, Director of Health Services for the ODOC, states in his affidavit that stool tests were done for culture, ova, and parasites, and were all negative, as was the camphylobacter test for stomach ulcers. Shelton Affid. at ¶ 11.

Dr. Shelton explains that Irritable Bowel Syndrome (IBS), is a diagnosis of exclusion. _Id._ On January 27, 2003, Dr. Degner determined IBS to be plaintiff's diagnosis. Attchmt 4 to Shelton Affid. at p. 108. Dr. Degner found plaintiff's abdomen at that time to be soft, with mild tenderness to the left lower quadrant, but with no guarding or masses. _Id._ He ordered plaintiff to use Metamucil daily and to return to the clinic in one month. _Id._ One month later, Dr. Degner noted plaintiff's continued complaint of

---

[3]  In generic form, Bentyl is known as dicyclomine, and is used to treat irritable bowel syndrome. _See_ www.medicinenet.com/dicyclomine.

persistent abdominal pain. Id. at p. 107. He found the abdomen to be soft, mildly tender in the lower left quadrant, with no guarding, masses, or referred pain. Id. He noted that plaintiff ambulated well without pain or obvious discomfort. Id. In late March 2003, Dr. Degner again noted plaintiff's continued complaint of abdominal pain, but noted that he ambulated well and without discomfort. Id. at p. 109. He found no pain on palpation. Id. He still continued to believe plaintiff had IBS, but also indicated that hepatitis should be ruled out. Id.

Plaintiff was prescribed different medications throughout 2003 in an effort to treat his discomfort, including Zantac[4], Bentyl, and Metamucil. Id. at p. 110. Tests for Hepatitis B and C were negative. Shelton Affid. at ¶ 13.

As explained by Dr. Shelton, and supported by the separate attachment to his affidavit explaining IBS, IBS is a disorder that interferes with the normal functions of the colon. Id. at ¶ 12; Attchmt 5 to Shelton Affid. The symptoms include crampy abdominal pain, bloating, constipation, and diarrhea. Id. People with IBS have colons that are more sensitive and reactive to things that might not bother other people, such as stress, large meals, gas, medicines, certain foods, caffeine, or alcohol. Id. IBS is diagnosed by its signs and symptoms, and by the absence of other diseases. Most people can control their symptoms by taking medicines (laxatives, antidiarrhea medicines, antispasmodics, or antidepressants), reducing stress, and changing their diet. Id.

---

[4]  The generic name for Zantac is ranitidine. www.medicinenet.com. It inhibits the production of stomach acid. Id.

5 - FINDINGS & RECOMMENDATION

IBS does not harm the intestines, and does not lead to cancer. <u>Id.</u>
It is not related to Crohn's disease or ulcerative colitis. <u>Id.</u>

Plaintiff was regularly seen by prison medical staff, and in June 2003, it was noted that despite his complaint of "a lot of pain" and pain upon movement, there were no obvious signs of pain and he ambulated well. Attchmt 4 to Shelton Affid. at pp. 110-112. He received an abdominal ultrasound in late June 2003. <u>Id.</u> at pp. 112-13. It was negative except for some fatty infiltration of the liver and mild hepatomegaly[5]. <u>Id.</u> at pp. 113, 210.

Beginning in July 2003, plaintiff began to complain of rectal bleeding, in addition to his chronic lower left abdominal pain. <u>Id.</u> Hemocult tests done in August 2003 showed the presence of blood in the stool. <u>Id.</u> at p. 114. A chart note on August 11, 2003, indicates that he would be referred for a colonoscopy. <u>Id.</u> A referral to a gastroenterologist was initiated that day. <u>Id.</u> at p. 247.

On October 7, 2003, plaintiff was examined by a gastroenterology specialist, Dr. Michael Buck. <u>Id.</u> at p. 249-50. Dr. Buck is not an ODOC employee, but is a specialist with whom the ODOC contracts when needed. <u>See</u> Shelton Affid. at ¶ 1. Dr. Buck reviewed the history of plaintiff's pain, noting that he had been complaining of left sided abdominal pain for approximately one year, and in that time, had received a sigmoidoscopy, prescription medication, blood work, and an abdominal ultrasound. Attchmt 4 to Shelton Affid. at p. 249. On physical exam, Dr. Buck found

---

[5] Enlargement of the liver. <u>Taber's Cyclopedic Medical Dictionary</u> 652 (Clayton L. Thomas, M.D., M.P.H. ed. 14th ed. 1981).

plaintiff's abdomen to be tender periumbilically in the left side, but with no masses or organomegaly[6]. Id. at p. 250.

Dr. Buck indicated that the first procedure to perform would be an "upper gastrointestinal small bowel follow through." Id.; see also id. at p. 248 (noting request for "UGI/SBFT" and "if neg will do colonoscopy"). He also suggested a colonoscopy might be needed. Id. It appears that the first procedure was performed in early December 2003. See id. at pp. 117, 214. The results were negative except for the presence of a small hiatal hernia and mild gastroesophageal reflux. Id. at pp. 117, 214.

On January 30, 2004, plaintiff was evaluated by Dr. Strauss who noted the "UGI/SBFT" (which I understand to mean upper gastrointestinal/small bowel follow through) as having shown a small hiatal hernia with "GERD" (gastroesophageal reflux disease), but which did not show any peptic ulcer disease or Crohn's disease. Id. at p. 118. Dr. Strauss examined plaintiff for the presence of a left inguinal hernia and determined there was none present. Id. He recommended that plaintiff undergo a colonoscopy because the majority of his symptoms appeared to be lower gastrointestinal. Id.

Plaintiff had the colonoscopy in early February 2004. Id. at pp. 119, 124, 217-18. It was negative. Id. Plaintiff followed up with Dr. Degner at OSP in March 2004. Id. at p. 120. Dr. Degner noted that no further evaluation was needed at that point. Id. In May 2004, Dr. Degner reaffirmed plaintiff's IBS diagnosis. Id. at

---

[6]  Abnormal enlargement of the viscera.

http://medical.merriam-webster.com/medical/organomegaly

7 - FINDINGS & RECOMMENDATION

1  p. 121.

2      According to Dr. Shelton, and the attachment he submits,
3  hiatal hernias form at the opening in the diaphragm where the
4  esophagus joins the stomach.  Shelton Affid. at ¶ 14; Attchmt 6 to
5  Shelton Affid.  Most small hiatal hernias cause no problem and a
6  patient may not know he or she has one unless a doctor discovers it
7  when checking for another condition.  Id.  A large hiatal hernia
8  can make it easier for stomach contents like food and acid to back
9  up into the esophagus, leading to heartburn and chest pain.  Id.
10 Self-care measures or medications can usually alleviate these
11 symptoms.  Id.

12     Since receiving the diagnoses of IBS and hiatal hernia,
13 plaintiff has continued to complain of abdominal pain.  E.g.,
14 Attchmt 4 to Shelton Affid. at pp. 122, 123 (complaints to doctor
15 in September 2004);  126 (complaint to doctor in March 2005); 127
16 (complaint to doctor in June 2005); 133 (complaint to nurse
17 practitioner in August 2005).  Each time, plaintiff was examined.
18 Id.  In the March 2005 chart note, Dr. Degner again noted that
19 despite plaintiff's complaint of left side abdominal pain, there
20 was no pain upon palpation and no masses or hernias detected.  Id.
21 at p. 126.  He also noted that plaintiff ambulated well with no
22 signs of pain.  Id.  Dr. Degner was unable to detect any swelling
23 or asymmetry in plaintiff's abdomen.  Id.  He continued to believe
24 plaintiff suffered from IBS.  Id.

25     Another chart note in May 2005 reveals that Dr. Degner again
26 examined plaintiff and noted that while plaintiff stated his pain
27 was constant and excruciating, he walked and moved normally without
28 any objective signs of pain.  Id. at p. 127.  At that time, Dr.

8 - FINDINGS & RECOMMENDATION

Degner still found nothing abnormal in his abdominal physical exam. _Id._  He noted some discomfort in plaintiff's left inguinal area, but found no hernia upon palpation.  _Id._  He noted that plaintiff probably had IBS and perhaps a groin strain without evidence of an inguinal hernia.  _Id._  He ordered some lab tests.  _Id._

Plaintiff was transferred to the Two Rivers Correctional Institution (TRCI) in July 2005.  _Id._ at p. 128.  On July 26, 2005, he received a thorough physical by a nurse practitioner at TRCI. _Id._ at pp. 129-31.  Plaintiff complained of continued lower left quadrant tenderness, radiating to his left testicle.  _Id._ at p. 129.  The nurse practitioner assessed plaintiff as having GERD, with H-pylori[7], along with chronic left lower quadrant pain and prostatitis or prostatosis.  _Id._ at p. 131.  Plaintiff was prescribed two antibiotics, as well as Prilosec[8] and Almag.[9]  _Id._ at p. 11.

---

[7]  "H. pylori infection occurs when a bacterium called Helicobacter pylori (H. pylori) thrives in [one's] stomach or the first part of [one's] small intestine." www.mayoclinic.com.  H. pylori infection may be present in about half the people in the world, from about 20 percent to 30 percent in the industrialized world, to more than 70 percent in developing countries.  _Id._ However, most people who carry the bacteria experience no signs or symptoms of infection.  _Id._  H. pylori infection is the most common cause of stomach ulcers, and it also causes inflammation of the stomach lining.  _Id._  Treatment is with antibiotics.  _Id._

[8]  The generic name for Prilosec is omeprazole. www.medicinenet.com.  It is a proton-pump inhibitor, used to block the production of acid by the stomach.  _Id._

[9]  The reference to "Almag" appears to refer to aluminum/magnesium antacid, available under a variety of brand names such as Maalox and Mylanta.  www.webmd.com.  The medication is used to treat the symptoms of too much stomach acid such as stomach upset, heartburn, and acid indigestion.  _Id._

9 - FINDINGS & RECOMMENDATION

Plaintiff followed up with the nurse practitioner in August 2005, at which time the Prilosec was discontinued but the Almag continued.  Id. at pp. 133-34.  Plaintiff also had blood drawn for various laboratory tests.  Id. at p. 133.

On September 16, 2005, plaintiff was examined by Dr. Greg Lytle.  Id. at p. 136.  He noted plaintiff's chronic abdominal pain.  Id.  He also ordered some additional laboratory tests.  Id. at p. 10.  Ten days later, he prescribed Zantac for plaintiff, and indicated he should take 150 milligrams, twice per day, for one year.  Id.  In October 2005, Dr. Lytle examined plaintiff again, and added hemorrhoids to his assessment.  Id. at p. 138.  He prescribed annusol suppositories for that condition.  Id. at p. 9.

Stool cultures performed in November 2005 were negative.  Id. at p. 140.  In December 2005, plaintiff had abdominal x-rays taken which were negative.  Id. at p. 209.  At this time, the TLC determined that a CT scan was not warranted given the negative colonoscopy from February 2004.  Id. at p. 312.  The TLC recommended continued conservative care.  Id.

Plaintiff continued to be seen by TRCI health staff for his complaints of pain.  E.g., Id. at p. 143 (seen in January 2006; IBS noted; received prescription for Bentyl); 145 (to clinic on April 18, 2006, for complaint of left testicular pain, but not examined because he became argumentative); 145 (seen by registered nurse on April 30, 2006, for complaint of abdominal pain; noted that plaintiff was already on medication; instructed to avoid eating sweets and greasy food, to drink lots of water with food, and to avoid lying down shortly after eating); 146 (seen on June 6, 2006 because of complaint of chronic left lower quadrant abdominal pain;

1  GERD and IBS noted; Prilosec prescribed).

2      Plaintiff was transferred back to OSP sometime in June 2006.
3  See Attchmt 1 to Vargo Affid. at p. 1 (affidavit filed in support
4  of defendants' response to plaintiff's motion for expert witness,
5  and incorporated into summary judgment record) (June 27, 2006
6  physician's order indicating plaintiff housed at OSP on that date).

7      An entry by health staff on November 29, 2006, states that
8  plaintiff had been on Bentyl for his IBS, but stated it did not
9  help much.  Id. at p. 7.  The chart note also states that plaintiff
10  was "doing well now."  Id.  On April 19, 2007, at 1:00 a.m.,
11  plaintiff appeared at health services, complaining of left lower
12  quadrant pain and vomiting.  Id. On physical exam, his left lower
13  quadrant was painful upon palpation, but there was no palpable
14  mass.  Id.  Vomiting had ceased.  Id.  He was given ibuprofen and
15  instructed to return to the clinic later that day.  Id.

16      At 9:15 a.m., he saw Dr. Degner who noted plaintiff's
17  complaint of left testicle pain.  Id. at p. 8.  Dr. Degner noted
18  that plaintiff ambulated well without discomfort, up and down on
19  the exam table.  Id.  Dr. Degner noted plaintiff's complaint of
20  lower left quadrant tenderness, but Dr. Degner found no guarding,
21  "rebound," masses, or referred pain.  Id.  There was no hernia in
22  the groin area.  Id.  He concluded that plaintiff still had IBS.
23  Id.  He ordered some lab tests.  Id.

24      On May 21, 2007, plaintiff reported severe pain in his left
25  testicle.  Id.  He saw Dr. Vargo on May 23, 2007, and complained of
26  excruciating left testicle pain.  Id. at pp. 8-9.  Dr. Vargo
27  ordered an ultrasound of plaintiff's testicles.  Id.

28      Two days later, plaintiff was brought to health services from

11 - FINDINGS & RECOMMENDATION

his housing unit via wheelchair and complained that he was having severe left side pain.  Id. at p. 9.  He stated he had vomited twice.  Id.  Plaintiff saw Dr. Degner later that morning.  Id.  Dr. Degner noted that plaintiff's complaints were similar to what plaintiff had been having on and off for years.  Id. He noted that plaintiff ambulated well, but complained of upper abdominal pain.  Id.  On physical exam of plaintiff's abdomen, Dr. Degner found  no guarding, rebound, or referred pain, and no masses.  Id.  He still considered plaintiff to be experiencing symptoms of IBS.  Id. Additional lab tests were ordered.  Id. at p. 10.

Later that day, plaintiff received antacid tablets when he again complained to health services staff about severe abdominal cramps and sharp abdominal pain.  Id.  He was placed in the infirmary for observation.  Id.  At 9:30 p.m., Dr. Vargo reviewed the lab test results and ordered plaintiff back to his housing unit because he was doing well.  Id.; see also Vargo Affid. at ¶ 8.

On June 8, 2007, plaintiff received an ultrasound of his testicles.  Vargo Affid. at ¶ 9.  The results were normal except for a mild hydrocele in the right testicle and a very mild hydrocele in the left testicle.  Id.

As explained by Dr. Vargo, hydrocele is usually a painless condition when fluid accumulates in the scrotal sac.  Id. at ¶ 10. No treatment is required because the fluid is absorbed into the body over a period of time.  Id.  In rare cases, the condition may worsen requiring medical intervention.  Id.  In Dr. Vargo's opinion, plaintiff has a small hydrocele that does not require medical intervention.  Id.

/ / /

12 - FINDINGS & RECOMMENDATION

STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'"  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)).  The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material.  T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).  The court should view inferences drawn from the facts in the light most favorable to the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to

13 - FINDINGS & RECOMMENDATION

the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

DISCUSSION

I.  Eighth Amendment Standards

To succeed on a section 1983 claim for inadequate medical treatment, plaintiff must demonstrate that defendants showed "deliberate indifference to [his] serious medical needs[.]" Estelle v. Gamble, 429 U.S. 97, 104 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000).  Plaintiff must show that he was confined "under conditions posing a risk of objectively, sufficiently serious harm and that the officials had a sufficiently culpable state of mind in denying the proper medical care." Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (internal quotations omitted).

The analysis possesses two components:  (1) an objective inquiry whether the prisoner's medical condition is sufficiently serious. See Wilson v. Seiter, 501 U.S. 294, 298 (1991); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  Second, the prisoner must demonstrate that subjectively, the prison official acted with a culpable state of mind.  Wilson, 501 U.S. at 298-99; Toguchi, 391 F.3d at 1057.

Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment.  Lopez, 203 F.3d at 1131.

14 - FINDINGS & RECOMMENDATION

1  Deliberate indifference is evidenced only when the official knows
2  of and disregards an excessive risk to inmate health or safety.
3  Clement, 298 F.3d at 904.  "[A] serious medical need is present
4  whenever the failure to treat a prisoner's condition could result
5  in further significant injury or the unnecessary and wanton
6  infliction of pain[.]"  Lolli v. County of Orange, 351 F.3d 410,
7  419 (9th Cir. 2003) (internal quotation omitted).

8       Mere negligence is insufficient for liability.  Clement, 289
9  F.3d at 904.  Rather, the prisoner must show that the course of
10 treatment undertaken was medically unacceptable under the
11 circumstances, and that the defendants chose this course in
12 conscious disregard of an excessive risk to plaintiff's health.
13 Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  A
14 difference of opinion does not establish deliberate indifference.
15 Id.  Further, whether "an x-ray or additional diagnostic techniques
16 or forms of treatment [are] indicated is . . . a matter for medical
17 judgment . . . . [that] does not represent cruel and unusual
18 punishment" in violation of the Eighth Amendment.  Estelle, 429
19 U.S. at 107.

20 II.  Discussion

21      Defendants contend they are entitled to summary judgment
22 because they did not demonstrate deliberate indifference to a
23 serious medical need, or alternatively, they are qualifiedly immune
24 from liability in damages.  Because I agree with defendants as to
25 their primary argument, I do not address their alternative
26 qualified immunity argument.

27      Defendants do not appear to contest that IBS and a hiatal
28 hernia are serious medical conditions.  While there might be some

debate as to whether a mild hydrocele is properly considered a serious medical condition, for the purposes of this discussion, I assume it is. Accordingly, the focus of the analysis is on the second, or subjective, component - does the evidence show that defendants knew of and disregarded an excessive risk to plaintiff's health.

As the recitation of the relevant evidence makes clear, defendants have not ignored plaintiff's long standing complaints of abdominal pain, or his more recent complaints of testicular pain. In response to his persistent complaints, plaintiff has received several diagnostic tests, including x-ray, ultrasound, sigmoidoscopy, and colonoscopy. Laboratory tests, including repeat urinalyses, blood tests, and stool tests have been performed. He has been tried on a variety of medications. He has received advice regarding his diet.

Plaintiff has been examined dozens of times by the ODOC primary care health staff. Additionally, he has been examined by a surgeon for consultation, and has been further examined by an outside urologist and an outside gastroenterologist. The record shows he has received timely, consistent, and attentive medical care for his conditions.

In his "Brief in Opposition to Defendant's Summary Judgment Motion," plaintiff suggests that defendants have violated the Eighth Amendment because the medical care he has received has been "minimal," and because defendants have denied plaintiff surgery for his hiatal hernia. Pltf's Brief in Opp. (dkt #34) at p. 2. While it is undisputed that plaintiff continues to experience pain, despite prompt and ongoing medical attention, he fails to show that

1  the treatment provided has been medically unacceptable and that
2  defendants have acted in conscious disregard of an excessive risk
3  to plaintiff's health.  Plaintiff may simply have to accept that
4  there may be no effective treatment for his pain.

5      Moreover, surgery does not appear to be indicated for any of
6  plaintiff's three diagnosed conditions.[10]  There is no cure for IBS.
7  Attchmt 5 to Shelton Affid. at p. 4.  As noted above, IBS is
8  typically controlled with various medications, stress reduction,
9  and a change in diet.  Id. at pp. 4-6.  Surgery is not mentioned as
10  a treatment option.  Id.

11      Plaintiff's 2007 ultrasound revealed that his hydrocele was
12  mild in one testicle and very mild in the other.  There is no
13  treatment for a mild hydrocele.  Vargo Affid. at ¶ 10.  In severe
14  cases, which are rare, medical intervention may be required but the
15  summary judgment record does not establish a material issue of fact
16  regarding the severity of plaintiff's condition.

17      Plaintiff's own submissions show that surgery is not a
18  preferred treatment option for a small hiatal hernia.  According to
19  Exhibit A to Plaintiff's Supplemental Opposition to Defendant's
20  Motion for Summary Judgment[11], most small hiatal hernias are
21  asymptomatic and do not require treatment.  Exh. A to Pltf's Supp'l

22

23

24      [10]  Plaintiff appears to argue that his constitutional
        rights have been violated by defendants' refusal to allow surgery
25      only for the hiatal hernia.  Because his briefing is a bit
        unclear, out of an abundance of caution, I address this argument
26      in regard to the IBS and hydrocele as well.

27      [11]  Plaintiff does not identify the exhibit but it appears
        to be a medical dictionary entry for hernia, which includes both
28      text and a diagram.

17 - FINDINGS & RECOMMENDATION

Opp. (dkt #48) at p. 2.  Those hiatal hernias causing symptoms "do so because of inflammation of the esophageal lining resulting from reflux of gastric contents."  Id.  Typically, such symptoms occur after a full meal and include heartburn and indigestion.  Id.

"The preferred treatment [of a hiatal, or diaphragmatic, hernia], consists of small meals of bland, easily digested food, moderate exercise, and sleeping with the upper part of the body in a raised position.  Surgical repair involves invasion of the abdominal and thoracic cavities and is reserved for severe cases that cannot be managed medically."  Id. Objective diagnostic tests reveal that plaintiff has a small hiatal hernia which, according to plaintiff's own submission, should not require surgery to repair. Additionally, as defendants note, surgery, while an unusual treatment for hiatal treatments generally, is certainly not indicated where plaintiff's main complaints of persistent left lower quadrant abdominal pain, are not associated with the condition.

Importantly, as stated above, a difference of opinion over a recommended or prescribed course of treatment, does not amount to an Eighth Amendment claim.  Jackson, 90 F.3d at 332.  The summary judgment record shows nothing more than plaintiff's unhappiness with the treatment provided to him.  It does not reveal any deliberate indifference by defendants.

Finally, although the only claim plaintiff raised in his Complaint was one under the Eighth Amendment, he mentions a procedural due process claim in his Brief in Opposition to Defendant's Summary Judgment Motion (dkt #34, page 1).  He also mentions a First Amendment claim in his Supplemental Opposition

18 - FINDINGS & RECOMMENDATION

(dkt #48, page 3 of Affidavit).  Plaintiff fails to clearly set forth the basis for these claims, but I suspect they are related to facts he asserts regarding the failure to process, or the delay in processing, a grievance in which he complained about his medical care.

First, I consider these to be new claims, not plead in the original complaint.  While courts must construe pro se complaints liberally, the Complaint in this case provides no basis for inferring an Eighth Amendment or First Amendment claim.

Second, I do not construe plaintiff's summary judgment opposition filings as seeking to amend the original complaint. Plaintiff does not expressly seek leave to amend to include a due process or First Amendment claim.  Plaintiff fails to attach a proposed amended pleading as required by Local Rule 15.1(c)).

Third, even if I consider the recitation of two, previously unarticulated claims, with nothing more, as a request for leave to amend, I would deny the motion as untimely, given that a June 21, 2006 scheduling order established a sixty-day deadline for filing all pleadings (dkt #12).  Because the time for amending the pleadings expired over a year ago, plaintiff must demonstrate good cause for this delayed amendment.  See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000) (noting that because the district court had filed a pretrial scheduling order that established a timetable for amending the pleading, the applicable rule was Federal Rule of Civil Procedure 16(b)).  "This standard primarily considers the diligence of the party seeking the amendment."  Id. (internal quotation omitted).  Plaintiff provides no reason for attempting to amend his claims at this point in time.

19 - FINDINGS & RECOMMENDATION

1    I would also deny such a motion even if I considered it under
2    Rule 15. While the court should liberally grant motions for leave
3    to amend, the "timing of the motion, after . . . a pending summary
4    judgment motion has been fully briefed, weighs heavily against
5    allowing leave." Schlacter-Jones v. General Tel. of Cal., 936 F.2d
6    435, 443 (9th Cir. 1991); see also M/V American Queen v. San Diego
7    Marine Constr. Corp., 708 F.2d 1483, 1492 (9th Cir. 1983) (denying
8    leave to amend was appropriate when "a motion for summary judgment
9    was pending and possible disposition of the case would be unduly
10   delayed by granting the motion for leave to amend[.]"); Roberts v.
11   Arizona Board of Regents, 661 F.2d 796, 798 (9th Cir. 1981)
12   (affirming the denial of a motion for leave to amend because
13   raising the new issue at the "eleventh hour" with a pending summary
14   judgment motion, was prejudicial to the moving party).

15       Fourth, even if I allowed the claims to be brought at this
16   point, they would not survive summary judgment. Prisoners have no
17   constitutional right to a prison grievance procedure. Ramirez v.
18   Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d
19   639, 640 (9th Cir. 1988). Thus, even assuming the truth of
20   plaintiff's allegations regarding the handling of the grievance,
21   there is no constitutional due process violation. See Buckley v.
22   Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (no actionable section
23   1983 claim presented by prisoner's allegations that defendants
24   refused to process his grievance forms in which prisoner complained
25   about deductions from prison account which, according to prisoner,
26   amounted to cruel and unusual punishment by depriving him of
27   ability to purchase certain hygiene items); Gray v. Woodford, No.
28   05CV1475J(CAB), 2007 WL 2790588, at *5 (S.D. Cal. Sept. 25, 2007)

20 - FINDINGS & RECOMMENDATION

(plaintiff's allegations regarding improper handling of his grievances failed to state a due process claim); O'Brien v. Seay, No. 5:04cv228-SPM/EMT, 2007 WL 788457, at *19-20 (N.D. Fla. Mar. 12, 2007) (mishandling of grievances directed at medical staff did not support a due process claim), aff'd, 2008 WL 124424 (11th Cir. Jan. 15, 2008). Moreover, here, plaintiff fails to show that any failure to process, or delay in processing, a grievance, caused or contributed to the provision of constitutionally inadequate medical care. As explained above, plaintiff cannot sustain his Eighth Amendment claim.

As to the First Amendment claim, plaintiff suggests that his "right to redress" was chilled or infringed by the failure to process his grievance. Again, because plaintiff has no constitutional right to a grievance procedure, the failure of prison employees to abide by one does not result in a constitutional claim. Additionally, a prisoner's First Amendment right to redress requires prison officials to provide "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 356 (1996). Absent a claim of retaliation, which plaintiff here does not bring, the failure to process a grievance did not interfere with plaintiff's filing this lawsuit. The facts asserted by plaintiff do not raise a First Amendment claim.

## CONCLUSION

I recommend that defendant's summary judgment motion (#23), be granted.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a

21 - FINDINGS & RECOMMENDATION

United States District Judge for review.  Objections, if any, are due May 22, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

    If objections are filed, a response to the objections is due June 5, 2008, and the review of the Findings and Recommendation will go under advisement on that date.

    IT IS SO ORDERED.

                    Dated this __7th___ day of _May_____, 2008.




                              _/s/ Dennis James Hubel_____
_____  Dennis James Hubel
                              United States Magistrate Judge

22 - FINDINGS & RECOMMENDATION